**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

```
_____X
In re:                               :
                                     :
NatTel, LLC,                         :    Chapter 11
                                     :    Case No. 06-50421
         Debtor.                     :
_____X
NatTel, LLC,                         :
                                     :
         Plaintiff,                  :
                                     :
    v.                               :    Adv. Pro. No. 07-5037
                                     :
Oceanic Digital Communications, Inc.,:
ODC St. Lucia Limited,               :
PCI Holdings Ltd.,                   :
Oceanic Digital Jamaica Limited,     :
S.A.C. Capital Advisors, LLC,        :
S.A.C. Capital Management, LLC,      :
S.A.C. Capital Associates, LLC,      :
América Móvil S.A.B. de C.V., and    :
The Bank of New York Mellon Corporation, :
                                     :
         Defendants.                 :
_____X
```

*Appearances*:

| | |
|---|---|
| Seth L. Marcus, Esq.<br>Leffler Marcu & McCaffrey LLC<br>200 Madison Ave., Ste. 1901<br>New York, NY 10016 | For the Plaintiff/Debtor |
| Jeffrey M. Sklarz, Esq.<br>Zeisler & Zeisler, P.C.<br>558 Clinton Ave.<br>Bridgeport, CT 06605 | |
| Julie A. Manning, Esq.<br>Shipman & Goodwin LLP<br>One Constitution Pl.<br>Hartford, CT 06103-1919 | For Defendants<br>S.A.C. Capital Advisors, LLC<br>S.A.C. Capital Management, LLC<br>S.A.C. Capital Associates, LLC |
| Robin G. Frederick, Esq.<br>Shipman & Goodwin LLP<br>300 Atlantic St.<br>Stamford, CT 06901 | |

| | | |
|---|---|---|
| Patrick M. Birney, Esq. | : | For Defendants |
| Robinson & Cole LLP | : | Oceanic Digital Commn's, Inc. |
| 225 Asylum St. | : | ODC St. Lucia Limited |
| Hartford, CT 06103 | : | Oceanic Digital Jamaica Limited |
| | : | PCI Holdings Ltd. |

Alan H. W. Shiff, United States Bankruptcy Judge:

**MEMORANDUM OF DECISION & ORDER ON:**

**I. ODC DEFENDANTS' MOTION FOR ORDER VACATING PLAINTIFF'S RULE 41(a)(1)(A)(i) NOTICE OF WITHDRAWAL, AND RENEWED MOTION TO VACATE;**

**II. PLAINTIFF'S MOTIONS TO AMEND ADVERSARY COMPLAINT;**

**III. DEFENDANTS' MOTIONS TO DISMISS;**

**IV. ODC DEFENDANTS' MOTION TO COMPEL ARBITRATION; AND**

**V. SAC DEFENDANTS' MOTION TO ABSTAIN OR DISMISS**

## Introduction

The plaintiff, NatTel LLC (NatTel), is a chapter 11 debtor which claims that its only property is its 667 shares in the defendant, Oceanic Digital Communications, Inc.[1] Upon learning of the contemplated sale of all of ODC's assets, NatTel commenced this adversary proceeding ("Action") seeking, *inter alia*, a declaratory judgment regarding the value of its shares.[2] ODC and the SAC defendants[3] object and have moved for its dismissal, relying on the *res judicata* and collateral estoppel effects of prior litigation

---

[1] For the purpose of this decision, the four above-captioned Oceanic entities will be considered as a single entity and referred to collectively as "ODC".

[2] This is notwithstanding similar efforts in several prior actions, as will be discussed, *infra*.

[3] Like the Oceanic entities, the SAC entities will be considered as a single entity and referred to collectively as "SAC".

and arbitration.

On October 29, 2010, and February 9, 2011, NatTel filed motions for permission to file a first and a second amended complaint. On February 7, 2011, NatTel filed a "Notice of Partial Dismissal" pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) and Federal Rule of Bankruptcy Procedure 7041 to dismiss the Action as it related to ODC (hereafter, the "Notice of Partial Dismissal"). ODC and SAC both object to the motions to amend. ODC also moves to vacate the Notice of Partial Dismissal and moves to compel arbitration; SAC joins in both those motions. SAC also requests the court to abstain from ruling on the Action.

## **Background**

Familiarity with the lengthy litigious history between the parties is assumed.[4] Nonetheless, the court will identify the salient parts of the record.

### *General Background Information*

NatTel is a wireless telecommunications holding company organized under the laws of Delaware as a limited liability company. Its principals are Jack Robinson and Daniel Carpenter. NatTel created ODC, which was originally organized under the laws of Delaware, but, sometime between 1998 and 2000, it became and remains incorporated as an international business company under the laws of the Commonwealth of the Bahamas. NatTel's principals were board members and officers of ODC. ODC was created for the purpose of acquiring cellular telecommunications licenses and operations in the Caribbean and Latin America. In 1998, when it was ODC's majority shareholder, NatTel began negotiations with SAC, a multi-billion dollar

---

[4] For a more detailed history of the litigation and arbitration between the parties through 2005, see Judge Arterton's "Ruling on Defendants' Motions for Reconsideration, Dismissal, and Sanctions". *NatTel, LLC v. SAC Capital Advisors, et al.*, 3:04-cv-1061, 2005 WL 2253756, *3-5 (D. Conn. Sept. 16, 2005) (hereafter, "Ruling"). The Ruling was summarily affirmed by the Second Circuit. See *NatTel, LLC v. SAC Capital Advisors, et al.*, 370 Fed. App'x 132, 2006 WL 957342 (2d Cir. 2006). The court relies on the Ruling in providing this outline. *See also NatTel, LLC v. SAC Capital Advisors, et al.*, 3:04-cv-1061, Klotz Affidavit (D. Conn. Sept. 13, 2004) (doc. #38; filed in support of the SAC Defendants' motion to dismiss in that action).

hedge fund, to acquire capital for those acquisitions. SAC subsequently invested $100 million and became ODC's majority and controlling shareholder. In early 2000, having a different vision for ODC, SAC caused NatTel's principals to be removed as officers and from the board of ODC. That event was the impetus for the subsequent ten years of litigation.

### *The May 2001 New York State Court Action Seeking Dissolution*

Alleging self-dealing, corporate waste and mismanagement, fraud, and oppressive actions, including the "freeze-out" of NatTel and its principals from the operation and control of ODC, NatTel sought the involuntary dissolution of ODC in the Supreme Court of the State of New York. In February 2002, that court dismissed the action, concluding it lacked jurisdiction over the internal affairs of a Bahamian corporation. *See Matter of NatTel, LLC*, Index No. 110598/01, slip op. (N.Y. Sup. Ct. Feb. 11, 2002) (Herman Cahn, J.).

### *The March 2002 Southern District of New York Action*

One month later, NatTel commenced a second action against ODC in the District Court for Southern District of New York, alleging:

> [t]his action arises out of the orchestrated "freeze out" and fraudulent dilution of the plaintiff founder shareholder of a closely-held cellular telecommunications company estimated to be worth in excess of $200 million, by those who now exert control over the company, and defendants' wrongful actions in connection therewith, including fraud, the issuance of phony share certificates and corporate articles, breach of fiduciary duty, wrongful denial of access to corporate information and breach of contract. Defendants' actions have caused plaintiff to suffer damages believed to be no less than $50 million.

*NatTel, LLC v. Oceanic Digital Commn's, Inc., et al.*, No.: 02-cv-2022 (GBD), Complaint at 1 ("Introduction") (S.D.N.Y. Mar. 11, 2002) ("SDNY Action"). Ultimately, the parties entered into a stipulation to arbitrate the dispute which was "so ordered", and which stayed the SDNY Action. *See, supra*, "The July 2002 Arbitration".

*The March 2002 Bahamian Action*

While its SDNY Action was pending and before the stipulation to arbitrate was ordered, NatTel commenced a "winding up" proceedings in the Bahamian courts, seeking to dissolve ODC under Bahamian law (the "Bahamian Action"). ODC appeared in the Bahamian court in opposition, arguing that the Bahamian Action should be stayed as any disputes among members must be arbitrated as required under its articles of association. The Bahamian court granted the stay, finding that NatTel was bound by the articles of association of ODC, which required arbitration of member disputes, and further finding that the parties in the SDNY Action had already stipulated to arbitrate their dispute which was ordered in that court.

*The July 2002 Removed Action*

On July 25, 2002, before arbitration commenced, NatTel secured an *ex parte* "Order to Show Cause with Temporary Restraining Order" from the Supreme Court of the State of New York which barred ODC from taking certain actions to acquire the stock or assets of another company and directing ODC to provide NatTel "with all relevant financial statements in connection with its status as a shareholder in ODC . . ." *NatTel, LLC v. Oceanic Digital Commn's, Inc.*, Index No. 116437/02, OSC, TRO (N.Y. Sup. Ct. July 25, 2002) (Alice Schlesinger, J.).

ODC caused that action to be removed to the District Court for the Southern District of New York where it was assigned to Judge Daniels, who was presiding over the stayed SDNY Action (that was to be submitted to arbitration). Judge Daniels vacated the temporary restraining order and denied NatTel's corresponding motion for a preliminary injunction.

*The July 2002 Arbitration*

During the July 2002 Arbitration, NatTel renewed its claim that ODC and SAC engaged in an orchestrated "freeze out" of NatTel from ODC, and had wrongfully

attempted to dilute the value of NatTel's shares.[5] NatTel sought a forced dissolution of ODC or a buyout of its minority interest on an undiluted fair market value basis.

Ultimately, the arbitrators found:

(1) the dispute involved the internal affairs of ODC;

(2) Bahamian law controlled the dispute because ODC was incorporated under the laws of the Bahamas;

(3) Under Bahamian law, "the basket of rights held by minority shareholders is almost empty, and very few legitimate expectations can arise from [the Bahamian International Business Companies Act]'s terms;" and

(4) NatTel did not prove any violations of its rights as a minority shareholder of ODC that would entitle it to any of the remedies it sought.

*See NatTel, LLC v. Oceanic Digital Commn's, Inc., et al.*, AAA No. 50 T 199 00413 02,

---

[5] Specifically, NatTel identified eight "claims of relief":

1. "Fraudulent Misrepresentation" for which it sought money damages;
2. "Breach of Fiduciary Duty Relating to Falsified Corporate Documents" against OCD and for which it sought monetary damages;
3. "Breach of Fiduciary Duty and Wrongful Denial of Access to Corporate Information" against ODC and for which it sought monetary damages;
4. "Declaratory Judgment" that the February 2002 Amended Memorandum of Association, which alleged to create three classes of stock (thereby diluting NatTel's share in the company), is void and any shares issued pursuant to that amended memo of association are also void;
5. "Breach of Contract" of Robinson's "Consulting Agreement" (which was assigned to NatTel) for which NatTel seeks monetary damages;
6. "Breach of Fiduciary Duty [caused by ODC's] Self Dealing," for which NatTel seeks monetary damages;
7. "Breach of Fiduciary Duty [caused by ODC's] Corporate Waste," for which NatTel seeks monetary damages; and
8. The dissolution of ODC pursuant to Bahamian Law or such other alternative equitable relief, *i.e.*, the forced redemption of NatTel's interest in ODC on an undiluted, fair market value basis.

*See NatTel, LLC v. Oceanic Digital Commn's, Inc., et al.*, AAA No. 50 T 199 00413 02, Second Amended Statement of Claim (Am Arb. Assoc. Dec. 6, 2002) (filed in *NatTel, LLC v. SAC Capital Advisors, et al.*, 3:04-cv-1061, Exhibit 10, attached to Klotz Affidavit (doc. #38) (D. Conn. Sept. 13, 2004)).

Final Award with Statement of Reasons at 8 (Am Arb. Assoc. Feb. 11, 2004) (hereafter, "Arbitration Award").

The arbitrators also found that ODC could not sustain its counterclaims against NatTel because it failed to produce sufficient proof to support those claims, to wit, misuse of corporate funds by Robinson requiring disgorgement; entering into unauthorized transactions for which NatTel should be liable; and wrongful and fraudulently prosecuted litigation warranting ODC's recovery of costs. *See id.* at 10.

On April 2, 2004, the Arbitration Award was confirmed by Judge Daniels in the SDNY Action.

### *The June 2004 District of Connecticut Action*

On June 29, 2004, NatTel commenced another action, this time in the District Court for the District of Connecticut. That action renewed its claim that it had been injured as a minority shareholder of ODC, but this time its allegations were directed against SAC, the majority shareholder of ODC. Various amendments were made to the complaint, with NatTel adding a defendant and causes of actions, and then deleting other causes of action. Ultimately, the district court determined that NatTel's third amended complaint was the operative complaint, which raised eight causes of action:

I.     Breach of Executed Contract;
II.    Breach of Fiduciary Duty;
III.   Trover and Conversion: Substantial Interference;
IV.    Trover and Conversion: Constructive;
V.     Constructive Fraud;
VI.    Fraudulent Non-Disclosure;
VII.   Fraudulent Misrepresentation; and
VIII.  Violation of CUTPA.

*See NatTel, LLC v. SAC Capital Advisors, et al.*, 3:04-cv-1061, Third Amended Complaint (doc. #69) (D. Conn. Aug. 19, 2005).

SAC moved to dismiss all claims. The motion was granted. Significantly, Judge Arterton ruled that NatTel was collaterally estopped by the Arbitration Award from

bringing Counts II, V, VI, and VII, the so-called fiduciary duty and fraud claims, against SAC. *See NatTel, LLC v. SAC Capital Advisors, et al.*, 3:04-cv-1061, 2005 WL 2253756, *7-10 (D. Conn. Sept. 16, 2005). Judge Arterton also held that those counts would have failed on the merits under applicable Bahamian law. *Id.* at *10.[6]

The Second Circuit Court of Appeals affirmed:

> We need not address the District Court's application of the doctrine of collateral estoppel because even assuming arguendo that NatTel could escape the preclusive effects of the arbitration panel's February 11, 2004 decision, the District Court was correct in concluding that, under Connecticut choice-of-law provisions, Bahamian law would govern NatTel's suit.

*NatTel, LLC v. SAC Capital Advisors LLC, et al.*, 370 Fed. App'x 132, 134, 2006 WL 957342, *2 (2d Cir. Apr. 12, 2006).

---

[6] Judge Arterton found the plaintiff's conversion causes of action were legally insufficient and that "NatTel's claim of conversion based on 'substantial interference' or 'constructive' taking of the incidents of ownership over its ODC shares fails as a matter of law." *NatTel,* 2005 WL 2253756, at *10. Further, a trover action "cannot be maintained where a conversion claim would fail." *Id.* at *11. Therefore, Counts III and IV were dismissed.

As to Count I, the breach of contract claim, because the alleged promise upon which NatTel relied was too vague to form a contract, no action for breach could succeed. Accordingly, Count I was also dismissed. *See id.* at *11-12.

Finally, finding that the challenged conduct of SAC "reflected[ed] only internal corporate operations," *id.* at *13, the court found that such conduct cannot support a CUTPA claim. *Id.; see also id.* at *12 (recognizing that the "Connecticut Supreme Court has held that 'purely intracorporate conflicts do not constitute CUTPA violations'") (further citation omitted). Thus, Count VIII was also dismissed.

*The 2006 Connecticut State Court Action*

On October 2, 2006, NatTel commenced an action in the Connecticut Superior Court against SAC,[7] seeking a bill of discovery

> allowing it to seek the production of documents from, and to take certain depositions of representatives of, [SAC and another entity] to obtain information to prosecute a civil action against the defendants alleging a violation of the Connecticut Uniform Securities Act, General Statutes §§ 36b-1 et seq. (CUSA), breach of fiduciary duty, self dealing, breach of the duty of care and fraud.

*NatTel, LLC v. S.A.C. Capital Assocs., LLC, et al.*, Docket No. FST-CV-06-4010215-S, slip op. at 1 ("Background") (Sup. Ct., Stamford, July 2, 2007) ("2006 State Court Action"). In response, SAC filed a motion to strike,[8] which was granted. *See id.* at 9. The state court stated, *inter alia*, "NatTel's bill of discovery is its eighth attempt to litigate the claims that is has been wrongfully damaged by the actions of the defendants which have taken control of ODC." *Id.* at 3. Notably, while it determined that NatTel's claims regarding breach of fiduciary duty and self-dealing had already "been litigated thoroughly," and, therefore did not provide a basis upon which to grant NatTel's petition, it was "not persuaded that either collateral estoppel or Bahamian law necessarily bars a claim under [Connecticut Uniform Securities Act ("CUSA")]." *Id.* at 7. Ultimately, however, "[b]ased on the striking paucity of detailed supporting facts," the state court concluded that "NatTel's petition fails to establish there is probable cause that [it] has a potential cause of action under CUSA." *Id.* at 9.

On July 17, 2007, NatTel filed a substitute petition for a bill of discovery, to which SAC filed another motion to strike. Before the state court ruled on either, NatTel filed a voluntary withdrawal of the 2006 Connecticut State Court Action.

---

[7] Non-party Signal Equity Partners, L.P., was also a named defendant in that action.

[8] Because NatTel filed for bankruptcy relief days after commencing the 2006 Connecticut State Court Action, SAC sought relief from the automatic stay to defend against the action, which was granted on November 9, 2006 (*see* doc. #43).

***NatTel's Chapter 11 Case***

On October 5, 2006, NatTel filed for bankruptcy protection under chapter 11 of the Bankruptcy Code. As noted: NatTel claimed that its sole tangible property was 667 shares in ODC, which is approximately 6.2% of the total shares; SAC is the majority shareholder of ODC; and ODC was organized under the laws of the Bahamas. NatTel claimed the company was worth between $75 and $100 million.

NatTel received a "Notice of a Meeting of Members of [ODC] to be Held in Accordance with Section 80 of the International Business Company Act ("IBCA")" ("§ 80 Notice"), dated September 18, 2007, which advised ODC members of the proposed sale to America Movil, S.A.B. de C.V. ("Movil") of "all the outstanding shares of the capital stock of Oceanic Digital Jamaica Limited ("ODJ"), an indirect subsidiary of [ODC], for a purchase price of US $9,418,033." In addition, pursuant to the terms of the purchase agreement, "US$64,000,000 of claims of creditors of [ODJ] will be paid at closing." ("Movil Transaction".) (*See* doc. #40-7.) The § 80 Notice concluded by informing members of their "right to dissent from the authorization and approval of the Purchase Agreement" and "to receive payment of the fair value of their shares *pursuant to and in accordance with Section 83 of the IBCA*." (*Id.* at 2 (emphasis added).) Dissenters were instructed to strictly comply with § 83 of the IBCA. (*Id.*) In an October 1, 2007 letter sent to ODC, NatTel objected to the Movil Transaction and "proposed to demand payment for its shares" if the Movil Transaction was approved by a majority of the ODC members. (*See* doc. #40-8.)

***Procedural Background of this Adversary Proceeding*** [9]

On September 21, 2007, NatTel commenced this Action against ODC and SAC for declaratory judgment as to the value of its 667 shares in ODC, as well as for equitable relief.[10]  Specifically, NatTel sought a declaration that its ODC shares were worth approximately $15 million and that the Movil Transaction would render those shares worthless, a re-characterization of inter-company debt as equity, and the imposition of a constructive trust over $15 million of the approximate $75 million of sale proceeds to be generated from the Movil Transaction.  (*See* Complaint at 1-2, ¶¶ (A)-(C), doc. #1.)  On October 12, 2007, SAC filed a motion to withdraw the reference.  (*See* doc. #32.)  On October 15, 2007, ODC filed a motion to dismiss the Action (*see* doc. #48), as did SAC on November 2, 2007(*see* doc. #65).  Because of the pending motion to withdraw the reference, hearings on the motions to dismiss this Action were deferred.

In November 2007, the Movil Transaction closed[11] with all the sale proceeds being paid, directly or indirectly, to SAC.  NatTel received nothing for its 667 shares in ODC.

---

[9]  On December 7, 2007, NatTel commenced a state court action against Defendants S.A.C. Capital Associates, LLC, and S.A.C. Capital Advisors, LLC, among others, raising claims resulting from the Movil Transaction.  Causes of action included: tortious interference with business expectancies; breaches of fiduciary duties and duties of loyalty and fairness; related aiding and abetting causes of actions; and alleged violations of CUPTA and the Connecticut Uniform Securities Act ("CUSA").  (*See* doc. # 172-1 (Ex. A to SAC's Objection to NatTel's Supplemental Motion to Amend Adversary Complaint) (the "2007 State Court Action")).  The 2007 State Court Action has been stayed by order of the state court.

[10]  NatTel simultaneously filed an application for a pre-judgment remedy ("PJR"), seeking a $15 million attachment of the Movil Transaction sales proceeds.  (*See* doc. #4.)  Movil objected (*see* doc. #30), as did  ODC  (*see* doc. #39), to which the SAC joined (*see* doc. #41).  The PJR application and the objections thereto were marked off due to the filing of SAC 's motion to withdraw the reference.  (*See* text of docket entry dated Oct. 16, 2007.)

[11]  No stay of the Movil Transaction was sought or ordered.

In June 2009, the district court denied SAC's motion to withdraw the reference. *See In re NatTel, LLC*, No. 3:07-mc-285 (SRU), 2009 WL 1929080 (D. Conn. June 30, 2009). SAC moved for reconsideration. In July 2010, the district court denied the reconsideration motion. *See In re NatTel, LLC*, No. 3:07-mc-285 (SRU), 2010 WL 2977133 (D. Conn. July 22, 2010).

On September 28, 2010, this court conducted a status conference at which NatTel stated it wished to file an amended complaint because the Movil Transaction had been consummated. NatTel was given the opportunity to file a motion to amend, together with a proposed amended complaint, by October 29, 2010. If NatTel timely filed such a motion, ODC and SAC were given a bar date of November 19, 2010 to file a joint response. NatTel's reply would be due by December 3, 2010. A hearing on the motion to amend was scheduled for December 14, 2010. (*See* docket entry dated Sept. 28, 2010.)

NatTel filed its motion with a proposed amended complaint (*see* doc. #98), asserting four causes of action: (1) declaratory judgment as to valuation of ODC; (2) an accounting; (3) the reclassification of inter-company debt as equity; and (4) restitution as a result of unjust enrichment. ODC and SAC filed a joint objection(*see* doc. #103). ODC also filed a motion to compel arbitration of those issues (doc. #109), in which SAC joined and further requested that the Action be stayed against them if arbitration is ordered (*see* doc. #106). NatTel objected (*see* doc. #108).

Thus, the initial focus of the December hearing[12] became whether the issues raised in NatTel's complaint and its proposed first amended complaint were subject to the arbitration provision in ODC's articles of association. The court directed briefing on whether NatTel's claims should be decided by arbitration and deferred ruling on the motion to amend. (*See* docket text dated Dec. 21, 2010.)

---

[12] For clarity of the record, the court notes that (1) as a result of a pre-hearing telephonic conference, the court would first address the motion to compel arbitration and (2) the hearing scheduled for December 14, 2010 was re-scheduled to December 21, 2010. (*See* Dec. 21, 2010 Hr'g Tr. at 3:15-21 (doc. #131).)

On February 9, 2011, instead of filing the directed memorandum, NatTel filed a "Notice of Partial Dismissal" of ODC as a party in the Action and a motion for permission to file a second amend complaint against SAC alone. (*See* doc. #135, doc. #136 & #137, respectively.) NatTel's proposed second amended complaint sought: (1) an accounting; (2) restitution; (3) a finding of unjust enrichment; and (4) turnover of documents and of sale proceeds. ODC moved for an order vacating the "Notice of Partial Dismissal" (*see* doc. #139), which SAC joined (*see* doc. #142). They also filed a joint motion to dismiss the Action. (*See* doc. #151). NatTel objected. (*See* doc. #157). A hearing on the joint motion to dismiss was conducted on April 26, 2011, at which time the court reserved decision.

At an October 11, 2011 in-court status conference to address the discrete issue of which motion to amend its complaint NatTel intended to prosecute, NatTel stated that it was abandoning its first motion to amend its complaint (doc. #98) and requested the court to rule on its second motion to amend its complaint (doc. #136).[13] With that clarification, ODC and SAC were permitted an opportunity to file a response to which NatTel could reply. That briefing is now completed with ODC having filed a "Renewed Motion to Vacate Debtor's Notice of Voluntary Dismissal Without Prejudice" (doc. #178)

---

[13] The court notes that, in response to NatTel's Second Motion to Amend the Complaint (doc. #136), ODC and SAC filed a Joint Supplemental Motion to Dismiss in which they noted:

> The Joint Supplemental Motion to Dismiss is being filed pursuant to the Court's February 15, 2011 Order, relates back to the filing date of the Motions to Dismiss, and is without waiver of any rights or remedies of the ODC Defendants and the SAC Defendants. The SAC Defendants and the ODC Defendants hereby reserve their rights to argue the bases raised in their original Motions to Dismiss at the hearing currently scheduled for the Joint Supplemental Motion to Dismiss.

(Doc. #151, note1.) The court further notes that the defendants incorporated by reference into their Joint Supplemental Motion to Dismiss their original motions to dismiss, as well as attached additional extra-pleading materials.

and SAC having filed an objection to NatTel's second motion to amend its complaint (doc. #172), a response to NatTel's Notice of Partial Dismissal (doc. #173), and a motion to abstain or, in the alternative, to dismiss (doc. #179).

## Discussion

### I.

*NatTel's "Notice of Partial Dismissal"*

As noted, on February 7, 2011, NatTel filed its Notice of Partial Dismissal, which attempts to dismiss this Action without prejudice solely against ODC; and, on February 9, 2011, it filed its second motion to amend its complaint, together with its proposed second amended complaint. However, in its February 7, 2011 "Status Report" filed in the main case, NatTel stated, *inter alia*:

> The ODC Defendants have all been shut down and liquidated, and they have no assets. The SAC Defendants, by contrast, are part of a thriving hedge fund conglomerate with over $14 billion in assets. Accordingly, NatTel has decided that there is no logical reason to litigate (*or arbitrate*) against entities that have been liquidated and have no assets when the Defendants that misappropriated assets that rightfully belong to NatTel are thriving and have over $14 billion in assets.
> Consequently, because the ODC Defendants have not yet filed an answer or a motion for summary judgment in the adversary proceeding, NatTel had filed herewith a Notice of Partial Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) and Fed. R. Bankr. P. 7041 dismissing all claims against the ODC Defendants without prejudice. NatTel shall file forthwith a second motion to amend the adversary complaint in which all claims against the ODC Defendants are removed, leaving claims only against the SAC Defendants for turnover and related equitable relief. Not only will this be the most efficient and economical use of NatTel's limited resources, but *it will render moot all of the pending motions to stay and compel arbitration – since there is no agreement to arbitrate between NatTel and the SAC Defendants.*

Status Report at 2, ¶E (doc. #245 in Case No. 06-50421) (emphasis added).  ODC

moves to vacate the Notice of Partial Dismissal,[14] and SAC supports that motion.

Rule 41(a)(1)(A)(i) states:

>  **(a)** Voluntary Dismissal
>   **(1) By the Plaintiff.**
>    **(A) Without a Court Order.**  Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss *an action* without a court order by filing:
>     (i) a notice of dismissal before the opposing party serves either an answer *or a motion for summary judgment* . . .

Fed. R. Civ. P. 41(a)(1)(A)(i) (bold text in original; italics emphasis added) (made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7041).

ODC argues that NatTel is precluded from invoking Rule 41(a)(1)(A)(i) because ODC's motion to dismiss pursuant to Rule 12(b)(6) contained matters outside the pleadings, thereby requiring it to be " treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  As a result, ODC argues, NatTel is precluded from employing Rule 41(a)(1)(A)(i).  The court need not address that argument because, for the reasons that follow, the Notice of Partial Dismissal must be vacated.

By its plain language, Rule 41(a)(1)(A)(i) applies to the dismissal of an action, not a party.  *See Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979) (recognizing a plaintiff's "unfettered right voluntarily and unilaterally *to dismiss an action*" (emphasis added)).  Moreover, if one seeks the dismissal of a party from an action, the mechanism to do so is Rule 21, which requires court approval.  *Cf.* Fed. R. Civ. P. 21[15] ("Misjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party.").  If one were to effectuate removal of a party via Rule 41(a)(1)(A)(i), that party would eviscerate Rule 21 and the safeguards provided therein (*i.e.*, dropping a

---

[14] After the court's October 11, 2011 status conference, ODC renewed its motion to vacate the Notice of Partial Dismissal .  The court considers the arguments raised in both motions.

[15] Made applicable in bankruptcy by Rule 7021, Fed. R. Bankr. P. 7021.

party "on just terms" as determined by the court). Yet, that is what NatTel is seeking to do. As it admits in its Status Report, by its Notice of Partial Dismissal, NatTel is unilaterally trying to free itself from its obligation to arbitrate by dropping ODC. *See, supra*, p. 14. Accordingly, NatTel's Notice of Partial Dismissal is ineffective. It follows from that conclusion that, since ODC remain in this Action, the issue of arbitration remains.

II.

*NatTel's Motion to Amend Its Complaint*

Since the court has concluded that NatTel's Notice of Partial Dismissal is ineffective, its proposed second amended complaint, which eliminated ODC, is fatally flawed. Moreover, a review of the proposed first amended complaint and the proposed second amended complaint compels the conclusion that, but for the proposed exclusion of ODC, the two proposed complaints raise essentially the same causes of action. Therefore, to efficiently manage this Action and to avoid the futility of requiring NatTel to file yet another motion to amend with another proposed amended complaint, the court will assume NatTel is proceeding with its first motion to amend its complaint and its first proposed amended complaint.

NatTel argues that the equitable relief it sought in its original complaint arising from the then-prospective Movil Transaction is no longer applicable since that transaction is now *fait accompli*. Thus, it seeks to amend its complaint to reflect the facts as they currently exist and to appropriately revise the relief it now seeks. (*See* NatTel's Motion to Amend at 2, ¶2 (doc. #98).) NatTel asserts that it may amend as of right because the version of Rule 15(a)(1) applicable at the time this Action was effectively stayed in 2007 (by SAC having filed a motion to withdraw the reference) allows it to do so before a responsive pleading is filed. *See* Fed. R. Bankr. P. 7015. NatTel further argues that the motions to dismiss are not responsive pleadings. The court need not decide which version of Rule 15 is applicable (*i.e.*, the version in effect in

2007 or the currently amended version[16]) since it bases its ruling on Rule 15(a)(2).

NatTel alternatively moves to amend under Rule 15(a)(2), which permits a party to amend with either the opposing party's written consent or permission of the court. To that end, the Second Circuit instructs:

> Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires," it is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party. However, "[o]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion.

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-01 (2d Cir. 2007) (further citations omitted; brackets in original); *see also Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).

Here, justice requires that NatTel be given the opportunity to amend its original complaint. Doing so will permit NatTel to pursue relief within a factually accurate framework; *i.e.*, within a post-Movil Transaction setting versus under the original, pre-Movil Transaction setting. It would be inequitable to force NatTel to prosecute a complaint rendered stale by the passage of time which, arguably, is attributable to the motion practice of one of the defendants. Further, since this Action is still in its initial stage, with no discovery having been commenced and no pretrial order having been entered, permitting this amendment will not cause undue delay or prejudice.

---

[16] Under the current version of Rule 15, made applicable to bankruptcy by Federal Rule of Bankruptcy Procedure 15, a party that seeks to amend its complaint once as a matter of course, must do so within 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f). *See* Fed. R. Civ. P. 15(a)(1)(B) (effective Dec. 1, 2009). ODC and SAC have each filed Rule 12(b) motions.

### III.

*Defendants' Motions to Dismiss*

The court cannot conclude, as a matter of law, that permitting the amendment is futile. At this preliminary stage in the litigation, a cursory review of the first proposed amended complaint persuades the court that NatTel alleges specific facts supporting a plausible inference that the defendants may have violated NatTel's rights as a minority shareholder in a Bahamian company that has been sold. *See, e.g., Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (discussing the pleading requirement necessary to survive a motion to dismiss).

Under applicable Bahamian law, when a Bahamian company sells more than 50% of its assets, a dissenting member "*shall* be entitled to payment of the fair value of his shares upon dissenting" from that sale. IBCA, § 83(1)(c) (emphasis added). A liberal reading of NatTel's first amended complaint supports the conclusion that it is seeking to enforce its dissenting member's right upon the majority shareholder's sale of the company. This is a different fact scenario than presented in NatTel's prior litigations, where it was NatTel that had been seeking a dissolution of ODC or, in the alternative, to have ODC buy out its minority interest. As determined in the Arbitration Award, under applicable Bahamian law, as a minority shareholder, NatTel had no such right. Here, by contrast, ODC and SAC, *i.e.*, the majority shareholders, have caused all the assets of the ODC to be sold. Under that scenario, Bahamian law grants a dissenting member, *i.e.,* NatTel, the right to seek payment of the fair value of its shares. *See id.* Indeed, as noted, *supra*, p. 10, the § 80 Notice NatTel received informed it of its right to dissent to the sale and to receive payment of the fair value of its shares in accordance with the IBCA. (*See* doc. #40-7.) Therefore, while NatTel might be raising arguments that sound familiar and which have previously failed, because of the new facts under which it now proceeds, NatTel presents a new action, not previously available, for which it may plausibly be entitled to relief. In sum, the court cannot conclude, as a matter of law, that NatTel has failed to state a claim upon which relief can be granted since Bahamian law affords a dissenting member to the sale of a company with certain rights. *See* IBCA § 83.

## IV.

*Application of Bahamian Law*

The court further notes that the parties are required to comply with the provisions of applicable Bahamian law. According to § 83 of the IBCA, where a dissenting member objects to the sale of the company:

(1) the dissenting member, *i.e.*, NatTel, provides its name, address, number of shares, and demands payment of the fair value of its shares; *see* IBCA, § 83(5);

(2) the company, *i.e.*, ODC, "*shall* make" a written offer to purchase the shares at a price it determines to be the fair value; *see id.*, § 83(8) (emphasis added); and

(3) if the parties do not agree on the price, each designates an appraiser and those two appraisers choose a third appraiser who, together, "*shall fix* the fair value of the shares owned by the dissenting member . . . " *id.*, § 89(9) (emphasis added).

Here, NatTel has complied with the first requirement of IBCA, § 83(5), by informing ODC of its dissent to the sale and demand for payment of the fair value of its shares. There is no indication that ODC has made the requisite offer to purchase NatTel's shares in accordance with IBCA, § 83(8). Likewise, the third enumerated step of designating a third appraiser, etcetera, has not been pursued even though it is also required by Bahamian law and is arguably necessary to decide this Action. It would be manifestly unjust not to hold the defendants to the mandates of applicable Bahamian law in this instance, especially as they are the ones who have relied upon that law to defend against NatTel's efforts in the past. In other words, they should bear the burden of complying with Bahamian law just as they have benefitted from its application. Moreover, compliance with § 83 will likely supply the necessary resolution to this adversary proceeding.

## Conclusion

Accordingly, **IT IS ORDERED**:

(I) ODC's Motion for an Order Vacating Natel's Rule 41(a)(1)(A)(i) Notice of Partial Dismissal (doc. #139) and Renewed Motion to Vacate (doc. #171) are GRANTED;

(II) NatTel's Second Motion to Amend the Complaint is DENIED;

(III) NatTel's First Motion to Amend the Complaint is GRANTED, and the proposed first amended complaint is the operative complaint;

(III) ODC's and SAC's motions to dismiss the original complaint (doc. #48; doc. #65, and doc. #151) are DENIED as moot;

(IV) The parties are directed to comply with the Bahamian International Business Companies Act (IBCA) regarding the rights of dissenters to the sale of a company;

(V) On **May 23, 2012, at 10:00 am**, the court shall hear arguments on whether to compel arbitration regarding the application of the IBCA in accordance with this decision. The defendants shall have until May 2, 2012, to file memoranda in support of arbitration, if any. NatTel shall have until May 16, 2012, to file its response, if any. Memoranda shall not exceed ten pages; and

(VI) SAC's Motion to Abstain or, in the Alternative, to Dismiss (doc. #179), is DEFERRED.

Dated this 16th day of April 2012 at Bridgeport, Connecticut.

By the court

Alan H. W. Shiff
United States Bankruptcy Judge