**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

```
_____X
In re:                              :
                                    :
NatTel, LLC,                        :    Chapter 11
                                    :    Case No. 06-50421
        Debtor.                     :
_____X
NatTel, LLC,                        :
                                    :
        Plaintiff,                  :
                                    :
    v.                              :    Adv. Pro. No. 07-5037
                                    :
Oceanic Digital Communications, Inc.,:
ODC St. Lucia Limited,              :
PCI Holdings Ltd.,                  :
Oceanic Digital Jamaica Limited,    :
S.A.C. Capital Advisors, LLC,       :
S.A.C. Capital Management, LLC,     :
S.A.C. Capital Associates, LLC,     :
América Móvil S.A.B. de C.V., and   :
The Bank of New York Mellon Corporation,:
                                    :
        Defendants.                 :
_____X
```

*Appearances*:

| | |
|---|---|
| Seth L. Marcus, Esq.<br>Leffler Marcu & McCaffrey LLC<br>200 Madison Ave., Ste. 1901<br>New York, NY 10016 | For the Plaintiff/Debtor |
| Jeffrey M. Sklarz, Esq.<br>Convicer, Percy & Green, LLP<br>41 Hebron Ave.<br>Glastonbury, CT 06033 | |
| Patrick M. Birney, Esq.<br>Robinson & Cole LLP<br>225 Asylum St.<br>Hartford, CT 06103 | For Defendants<br>Oceanic Digital Commn's, Inc.<br>ODC St. Lucia Limited<br>Oceanic Digital Jamaica Limited<br>PCI Holdings Ltd. |

| | |
|---|---|
| Julie A. Manning, Esq.<br>Shipman & Goodwin LLP<br>One Constitution Pl.<br>Hartford, CT 06103-1919<br><br>Robin G. Frederick, Esq.<br>Shipman & Goodwin LLP<br>300 Atlantic St.<br>Stamford, CT 06901 | For Defendants<br>S.A.C. Capital Advisors, LLC<br>S.A.C. Capital Management, LLC<br>S.A.C. Capital Associates, LLC |

Alan H. W. Shiff, United States Bankruptcy Judge:

## MEMORANDUM OF DECISION & ORDER ON ODC'S RENEWED MOTION TO COMPEL ARBITRATION AND SAC'S MOTION TO STAY ACTION

### Introduction

After this court's April 16, 2012 Memorandum & Order[1] ("April 16, 2012 Decision"), which permitted the plaintiff/debtor NatTel LLC ("NatTel") to amend its original complaint in this adversary proceeding ("Action"), the defendant Oceanic Digital Communications, Inc., ("ODC"[2]) renewed its motion to compel arbitration ("Renewed Motion"; ECF No. 189). The SAC defendants[3] joined ODC's renewed motion and further moved to stay this Action, pending the outcome of arbitration ("Joinder/Stay Motion"; ECF No. 190). NatTel objected to both motions. For the reasons that follow, ODC's Renewed Motion and SAC's Joinder/Stay Motion are granted.

---

[1] *NatTel, LLC v. Oceanic Digital Commn's, Inc., et al.*, Adv. Pro No. 07-5037, 2012 WL 1309240, slip op. (Bankr. D. Conn. Apr. 16, 2012) (ECF No. 185).

[2] For the purpose of this decision, the four above-captioned Oceanic entities will be considered as a single entity and referred to collectively as "ODC".

[3] The SAC entities will be considered as a single entity and referred to collectively as "SAC".

## Background

The extensive litigious history between the parties has been the subject of this court's April 16, 2012 Decision, familiarity with which is assumed.[4]  Nonetheless, it is noted that NatTel LLC is a minority shareholder/member of ODC.  *See* April 16, 2012 Decision, 2012 WL 1309240, at *3.  A significant part of the numerous issues litigated over the last eleven years has been the value of NatTel's minority interest, *i.e.*, its 667 shares, in ODC.  SAC holds the majority interest in ODC..

In response to ODC's motion to compel arbitration, NatTel attempted to dismiss ODC from the Action by a "Notice of Partial Dismissal".  *See id.* at *6.  The court rejected that attempt.  *See id.* at *7.  Since ODC remains a party in this Action, the issue addressed here is whether the court should "compel arbitration regarding the application of the [International Business Company Act, ("Act")[5]] in accordance" with the April 16, 2012 Decision.  *Id.* at *10.

## Discussion

### I.  ODC's Renewed Motion

Since NatTel and ODC reside in different countries, *i.e.*, the Untied States and the Commonwealth of the Bahamas, respectively, and since both countries are signatories to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), ODC's Renewed Motion arises under the Convention, as

---

[4]  For further history of the litigation and arbitration between the parties through 2005, *see NatTel, LLC v. SAC Capital Advisors, et al.*, 3:04-cv-1061, 2005 WL 2253756, *3-5 (D. Conn. Sept. 16, 2005), *aff'd*, 370 Fed. App'x 132, 2006 WL 957342 (2d Cir. 2006).

[5]  The Act is defined in ODC's Articles of Association as "The International Business Companies Act, 2000 (No. 45 of 2000), including any amendment, modification, extension, re-enactment or renewal thereof and any regulations made thereunder."  Articles at (unnumbered) 1 (Ex. B, attached to ODC's original Motion to Compel Arbitration (ECF No. 109).)  It is the same Act referred to in the court's April 16, 2012 Decision.

enforced by Chapter 2 of the Federal Arbitration Act ("FAA").  *See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 29 (2d Cir. 2001).  Section 206 of the FAA specifically provides for the enforcement of arbitration provisions arising under the Convention.  *See* 9 U.S.C. § 206.  Moreover, "a strong presumption of arbitrability is established by the FAA."  *Sphere Drake*, 263 F.3d at 29; *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) (the FAA "embod[ies] a national policy favoring arbitration").

To ensure that the federal policy favoring arbitration is enforced in the bankruptcy setting, bankruptcy courts perform a four-part inquiry when presented with a motion to compel arbitration.

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Industires, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)).

***Agreement to Arbitrate***

Under Bahamian law,[6] once a Bahamian company's articles of association are registered under the Act, each shareholder of the company becomes bound by that company's articles "to the same extent as if he subscribed his name and affixed his seal thereto . . . ."  *See* Act, Art. 14(2).[7]  ODC adopted its articles on July 19, 2002 and

---

[6] This court has already determined that Bahamian law is applicable.  *See* April 16, 2012 Decision, 2012 WL 1309240, at *9; *see also NatTel, LLC v. SAC Capital Advisors, et al.*, 3:04-cv-1061, 2005 WL 2253756, *10 (D. Conn. Sept. 16, 2005) (applicable law is Bahamian law), *aff'd* 370 Fed. App'x 132 (2d Cir. 2006).

[7] The full text of Article 14(2) of the Act states:

recorded them with the Bahamian Register on that date. (*See* Exh. B at 29, 57, attached to original Motion to Compel (ECF No. 109) (hereafter, "Articles").) Since NatTel has previously conceded it is a member of ODC, its argument that it cannot be bound by the Articles because it was not a signatory to them is spurious. In any event, under applicable Bahamian law, NatTel is deemed to be a signatory to the Articles because the Articles were registered. *See* Act, Art. 14(2), *supra* note 7.

Further, the court is not persuaded by NatTel's venue argument, *i.e.*, that since the Arbitration Provision is silent as to venue, it is unenforceable. By previously pursuing arbitration twice in accordance with the Arbitration Provision, NatTel has waived any unenforceability argument. Even if that were not so, courts have found that when presented with international arbitration agreements, the FAA's venue section, 9 U.S.C. § 4, may be employed to designate venue if to do so does not conflict with Chapter 2 of the FAA (which deals with the enforcement of the Convention). *See* 9 U.S.C. § 4 (arbitration proceedings "shall be within the district in which the petition for an order directing such arbitration is filed"); *cf.* 9 U.S.C. § 206 (a court "may direct that arbitration be held in accordance with the agreement at any place therein provided for . . ."); *see also , e.g., Oil Basins Ltd. v. Broken Proprietary Co.*, 613 F. Supp. 483, 486-87 (S.D.N.Y. 1985) (where international parties' agreement did not designate location for arbitration, relying on 9 U.S.C. § 4 to compel arbitration in district); *Capitol Converting Co. v. Curioni*, 1989 WL 152832, *1 (N.D. Ill. Nov. 9, 1989). The court finds no such conflict.

It is noteworthy that oin at least two prior occasions, NatTel has acted in a manner consistent with its understanding that it is bound by the Articles, in general,

---

> The Articles, when registered, bind the company and its members from time to time *to the same extent as if each member had subscribed his name and affixed his seal thereto* and as if there were contained in the Articles, on the part of himself, his heirs, executors and administrators, a covenant to observe the provisions of the Articles, subject to this Act.

(*See* Exh. D at 26, attached to Renewed Motion (ECF No. 189) (emphasis added).)

and, in particular, the Arbitration Provision. As discussed in the April 16, 2012 Decision, in 2002, NatTel stipulated to arbitrating its claims against ODC and SAC arising out of its alleged "freeze out" from ODC. *See* April 16, 2012 Decision, 2012 WL 1309240, at *2-3. An arbitration award was rendered against NatTel which was confirmed by the district court in the Southern District of New York. *See id.* at *3. Further, in October 2005, NatTel voluntarily invoked the Arbitration Provision in an attempt to force the redemption of its shares in ODC pursuant to the Act. (*See* Exh. B, "Notice of Arbitration and Statement of Claim" at 1, attached to Renewed Motion (ECF No. 189).) In that Notice, NatTel also asserted that it was a member of ODC. *Id.* at 2, ¶6. The outcome of that arbitration is unknown to the court as it is subject of a confidentiality agreement. However, having already voluntarily stipulated to arbitration and then voluntarily invoking the Arbitration Provision, NatTel will not now be heard to repudiate it. *See, e.g., Gvozdenovic v. United Air Liens, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991) (parties' conduct, *e.g.*, participating in arbitration, can imply agreement to arbitrate); *see also, e.g., In re Arbitration between Promotora de Navegacion, S.A.*, 131 F. Supp.2d 412, 416-17 (S.D.N.Y. 2000) (requiring either express or *implicit unambiguous intent* to arbitrate in order for arbitration award to be confirmed).

### *Scope of Agreement*

The Articles contains the following arbitration provision:

> Whenever any difference arises between the Company on the one hand and any of the members or their executors[,] administrators or assigns on the other hand, touching the true intent and construction or the incidence or consequences of these Articles or of the Act, touching anything done or executed, omitted or suffered in pursuance of the Act or touching any breach or alleged breach or otherwise related to the premises or to these Articles, or to any Act effecting the Company or to any of the affairs of the Company . . . .

Articles, ¶ 166 (the "Arbitration Provision") (Ex. C, attached to ODC's original Motion to

Compel Arbitration (ECF No. 109)).

By its plain language, it is apparent that the Arbitration Provision must be broadly construed to encompass "*any* difference . . . *touching anything* done or executed, omitted or suffered in pursuance *of the Act* . . ." Arbitration Provision (emphasis added). *See also, e.g., JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 167 (2d Cir. 2004) (finding the arbitration clause "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter" to be a broad); *see also Oldroyd v.Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998).

***Whether Claims are Nonarbitrable***

Where federal statutory claims are asserted, a court must determine whether Congress intended those claims to be nonarbitrable. In a bankruptcy context, this requires the court to make a two-part inquiry: (1) does the court have discretion to prohibit arbitration; and (2) if there is discretion, would any underlying purpose of the bankruptcy code be adversely affected by enforcing an arbitration clause or provision. *See In re Winimo Realty Corp.*, 270 B.R. 108, 118 (S.D.N.Y. 2001).

In order to determine whether a bankruptcy court has discretion to prohibit arbitration, it must first determine whether the disputed issue is core or non-core. *See In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 165-66 (2d Cir. 2000). Parenthetically, it is noted that ODC argues that the determination of whether the dispute regarding the value of NatTel's minority share interest is a non-core proceeding. NatTel has not addressed that issue.

Where the disputed issue is non-core, "bankruptcy courts generally *do not* have discretion to *decline* to stay *non-core* proceedings in favor of arbitration, and they certainly have authority to grant such a stay." *Id.* at 166 (emphasis in original). "This is because non-core proceedings 'are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration'." *Winimo Realty*, 270 B.R. at 118 (*quoting In re Unites States Lines, Inc.*, 197 F.3d 631, 640 (2d Cir. 2000) (further citation omitted)). Accordingly, if this Action is a non-core proceeding, as OCD claims, the court lacks discretion to prohibit arbitration.

That result does not necessarily follow, however, if this Action is a core proceeding, and it is concluded that this Action falls within the court's core jurisdiction since it involves the valuation of bankruptcy estate property.  See 28 U.S.C. § 157(b)(2)(O).

"[B]ankruptcy courts in some circumstances retain discretion to decline to stay core proceeding] in favor of arbitration."  *Crysen/Montenay Energy*, 226 F.3d at 165.

> In exercising its discretion over whether, in core proceedings, arbitration provisions ought to be denied effect, the bankruptcy court must still carefully determine *whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause*.  The [FAA] as interpreted by the Supreme Court dictates that an arbitration clause should be enforced unless doing so would seriously jeopardize the objectives of the Code.

*U.S. Lines*, 197 F.3d at 640 (internal quotations, citations, and brackets omitted).

The party opposing arbitration, here NatTel, bears the burden "to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue."  *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987).  The issue, then, is whether having a valuation determination made in an arbitration proceeding would seriously jeopardize the objectives of the bankruptcy code, which seeks, *inter alia*, to marshal all the assets of a debtor, convert those assets to cash, and distribute those cash proceeds to creditors in accordance with the bankruptcy code's distribution requirements.  *See generally Straton v. New*, 318 U.S. 320-21 (1931) (purpose of bankruptcy law is "to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors"); *see also MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 91 (2d Cir. 1988).

### *Stay Balance of Proceeding*

NatTel's second count, seeking an accounting, and its third count, seeking reclassification of debt as equity, are necessarily intertwined with its first count, seeking a declaration of the value of its 667 shares.  NatTel's fourth count, seeking "equitable restitution in the form of the payment of the monetary value of [its] pro-rata share of the

cash proceeds generated from the sale" succeeds or fails depending on the outcome of the first count.  *See, e.g., Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (broad arbitration clause raises presumption that even collateral matters should be arbitrated).  Therefore, all of the claims in the Action are arbitrable as between NatTel and ODC, and those counts will be added to the first count as to which arbitration will be compelled.

## II.  SAC Joinder/Stay Motion

That conclusion, however, cannot be reached for SAC.  Since SAC is not a party to the Articles, it cannot be compelled to arbitrate.  See *Gvozdenovic*, 933 F.2d at 1105.  NatTel argues that its Action against SAC should not be stayed, pending the outcome of the NatTel–ODC arbitration.  That argument is unavailing.  (*See* NatTel's Objection at 9 (ECF No. 198).)  NatTel's alleged prejudice regarding the production of documents in the possession of SAC is speculative and not enough to persuade this court to deny the requested stay.  The paramount basis for staying the Action, however, is that the arbitration will resolve issues that may greatly simplify, if not be dispositive of, NatTel's claims against SAC.  Moreover, to allow the Action to proceed against SAC in this court could produce a result that is inconsistent with the findings and conclusions reached in the NatTel–ODC arbitration.  Thus, using its inherent power "to control the disposition of the causes on its docket, for economy of time and effort for itself, for counsel, and for litigants," the court will stay this Action as against SAC.  *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997).

## Conclusion

Accordingly, **IT IS ORDERED** that ODC's Renewed Motion to Compel Arbitration is granted; and

**IT IS FURTHER ORDERED** that SAC's Joinder/Stay Motion is granted.

Dated this 26th day of September 2012 at Bridgeport, Connecticut.

By the court

Alan H. W. Shiff
United States Bankruptcy Judge